STATE v. A. WERNWAG.

*Indictment for Violation of Town Ordinance—Sale and Delivery.*

Where an ordinance of a town prohibited the sale of fresh meats within certain limits, without a license, and the defendant who conducted the business of a seller of fresh meats outside of such limits, received a telephone message from a person within such limits to bring to the latter fresh meats of a certain kind at an agreed price, and subsequently delivered and received pay for the same. *Held,* that as the buyer would have had the right to reject the meats if not such as ordered, the transaction was executory until the delivery of the meats and the sale, therefore, took place within the prohibited limits and was a violation of the town ordinance.

Indictment for a violation of a town ordinance, tried on appeal from the Mayor's court of Asheville, at January Term, 1895, of the Criminal Court of BUNCOMBE County, before *Jones, Judge,* and a jury. The defendant was convicted and appealed. The facts appear in the opinion of Associate Justice MONTGOMERY.

*The Attorney General,* for the State.
No counsel, *contra.*

MONTGOMERY, J.: The city of Asheville, by one of its ordinances, prohibits by fine the sale of fresh meats without a license first had from the city, within a radius of three-fourths of a mile from the Court House as the centre of the circle except at the market established by the City. The defendant who lived and conducted the business of a seller of fresh meats outside of the 3-4 mile limit, received a telephonic message from C. H. Southwick, manager of a hotel inside of the limit, to bring to him at the hotel some fresh

meats, the prices being agreed on.   Agreeably to this message the defendant brought, in his own wagon, the meats to the hotel and delivered the same, receiving payment afterwards.   In making this transaction did the defendant violate the city ordinance and thereby become liable for the fine imposed by the city?   We are of the opinion that he did.   In the first place the goods ordered were not of a specific character and therefore the contract was only executory.   The witness said, " I telephoned to the defendant to send me some fresh beef and fresh mutton, describing such as I desired."   It cannot be doubted that if the meat when delivered at the hotel had not been of the kind ordered, the buyer could have refused to receive it. " Where there is a sale of goods generally no property in them passes until delivery, because until then the very goods sold are not ascertained."   Benjamin on Sales, Sec. 315.   The general rule is that if it is a part of the contract of sale that the seller shall deliver the property sold at some place specified and receive payment on delivery, title will not pass until such delivery.   Benjamin, *supra*, Sec. 325 ; *Edmundson* v. *Fort*, 75 N. C., 404.

2. The transaction was executory.   The difference between this and a sale is, that in the latter the goods which are the subject of the contract become the property of the buyer immediately upon the conclusion of the contract regardless of delivery, and the risk of loss or injury is upon the buyer ; whereas, in an executory contract the title to the goods is in the seller until the contract is executed. If in this case the fresh meats had been lost or destroyed on their way from the defendant's shop to the hotel, how could it be thought that the proprietor of the hotel would be compelled to pay for that which he had never received and which the defendant promised to deliver to him at his hotel in good condition?   The plain meaning of this mat-

ter is this : The hotel manager sent a message to a seller of meats outside of the ¾ mile limit, " bring me some fresh meats of a certain description ; if they are such as I order I will take them and pay you for them ; if they are not of the kind I order, I will not." Surely there is no sale in this.

3. The transaction cannot be a sale. In a bargain and sale, the thing which is the subject of the contract becomes the property of the buyer the moment the contract is con-cluded, without regard to whether the goods are delivered to the buyer or remain in the possession of the seller. *Lester* v. *East*, 49 Ind., 588. If by the terms of the contract the seller is required to send or forward the goods to the buyer, the title and risk remain in the seller until the transference is at an end, after which time the title is vested in the buyer. *Bloyd* v. *Pollocks*, 27 West Va., 75 ; *Taylor* v. *Cole*, 111 Mass., 363 ; *Fry* v. *Lucas*, 29 Penn. St., 356. The cases of *Armstrong* v. *Best*, 112 N. C., 59, and *Ober* v. *Smith*, 78 N. C., 313, are easily to be distinguished from the cases above cited, and the points are not of the same character with those. In *Armstrong* v. *Best*, and *Ober* v. *Smith*, the orders for goods were written in North Carolina and sent by letter to Baltimore. The goods were selected by the sellers and delivered to common carriers, unconditionally, for the purchasers. The delivery to the common carriers completed the contract, and upon that completion our Court held that the contract was governed by the laws of North Carolina, and not that the sale was complete when the goods were ordered in North Carolina.

There is no merit in the exception made by the defendant to the Court's allowing an amendment to the warrant issued by the mayor. The amendment did not change the nature of the action, and therefore the power of the Court to allow an amendment was unrestricted. *State* v. *Vaughan*, 91 N. C., 532 ; *State* v. *Norman*, 110 N. C., 484.

There was no error in the judgment of the Court below and the same is affirmed.

Affirmed.